# Illinois Official Reports

## Appellate Court

***Anekom, Inc. v. Estate of Demith***, 2018 IL App (3d) 160554

| | |
|---|---|
| Appellate Court Caption | ANEKOM, INC., an Illinois Corporation, Plaintiff, v. ESTATE OF RICHARD A. DEMITH, MAYWOOD-PROVISO STATE BANK, as Trustee Under Trust Agreement Dated March 14, 1973, and Known as Trust No. 3155, JOETTE LaVALLEY, Individually and as Independent Executor of the Estate of Richard A. Demith, E TRINITY CONSTRUCTION, LLC, and CARPENTRY BY CONNOR CONSTRUCTION, INC., Defendants (Carpentry by Connor Construction, Inc., and E Trinity Construction, LLC, Defendants and Counterplaintiffs-Appellees; Estate of Richard A. Demith and Joette LaValley, as Independent Executor of the Estate of Richard A. Demith, Plaintiffs and Counterdefendants-Appellants). |
| District & No. | Third District<br>Docket No. 3-16-0554 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | February 21, 2018<br><br>March 28, 2018<br>March 28, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 14-L-279; the Hon. John C. Anderson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

J. Mark Lukanich, of Palos Heights, for appellants.

Scott M. Hoster, of Castle Law, of Joliet, for appellees.

Panel

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices McDade and Wright concurred in the judgment and opinion.

**OPINION**

¶ 1    The Estate of Richard A. Demith (Estate) appeals the trial court's orders, granting summary judgment to Carpentry by Connor Construction, Inc. (Connor), and E Trinity Construction, LLC (E Trinity), on their respective complaints to foreclose their mechanic's liens. We affirm.

¶ 2                                        FACTS

¶ 3                                    I. The Parties

¶ 4    Anekom, Inc. (Anekom), is a general contractor. Connor and E Trinity are subcontractors. The Estate is the owner of the subject property located in Mokena, Illinois. Joette LaValley is the independent executor of the Estate. Connor and E Trinity contracted with Anekom to complete work on the Estate's property. Anekom is not a party to this appeal.

¶ 5                  II. The Original Contract and the Parties' Performance

¶ 6    On May 11, 2013, Anekom entered into a contract with LaValley, in her capacity as independent executor of the Estate, to demolish the Estate's fire-damaged structure and construct a new house in its place. Pursuant to the contract, Anekom agreed to complete the work within 180 days, according to the plans and specifications provided by the Estate, in exchange for payment of $414,000.

¶ 7    On May 16, 2013, Anekom subcontracted with E Trinity to install footings, basement floor base, and a garage floor. E Trinity completed its work under the subcontract on September 12, 2013.

¶ 8    On September 21, 2013, Anekom subcontracted with Connor for carpentry work. Connor completed its work under the subcontract on October 21, 2013.

¶ 9    On October 28, 2013, the Estate terminated the contract with Anekom after determining that the construction of the new house was not on schedule to be completed within the contractual 180-day term.

¶ 10   On April 29, 2014, the Estate entered into a contract with a second general contractor, Peak Construction and Remodeling, Inc. (Peak). The contract provided that "Peak Construction & Remodeling will be taking over and completing the LaValley residence" for a total cost of $280,633.

### III. Claims for Mechanic's Liens

¶ 12    On November 22, 2013, Connor filed a notice and claim for a mechanic's lien against Anekom and LaValley, in her capacity as independent executor of the Estate, in the amount of $63,500. On November 27, 2013, E Trinity filed a notice and claim for mechanic's lien against the Estate and Anekom in the amount of $38,070. On January 14, 2014, Anekom filed an original contractor's claim for lien against Maywood-Proviso State Bank as trustee, the Estate, and LaValley in her capacity as independent executor of the Estate.

### IV. Anekom's Complaints

¶ 14    On April 8, 2014, Anekom filed a six-count complaint in the circuit court of Will County. In July 2014, Anekom filed an amended complaint, adding E Trinity and Connor as defendants. Counts I, II, and III sought to foreclose Anekom's lien against Maywood-Proviso State Bank, the Estate, and LaValley, in her capacity as independent executor of the Estate. Anekom alleged it had "completely performed its obligations under the contract until October 27, 2013, at which time Joette LaValley denied Anekom access to the job and prevented it from completing its work." Anekom asserted that the value of services it performed totaled $179,790, of which $109,000 remained due. Anekom further alleged that it gave notice of its lien on January 14, 2014, and that its lien claim superseded any subsequent liens. Count IV alleged breach of contract against LaValley, individually and in her capacity as independent executor of the Estate. Count VI advanced a *quantum meruit* claim. The trial court eventually dismissed Anekom's claims with prejudice for failure to appear.

### V. Counterclaims of Connor and E Trinity

¶ 16    In September and November 2014, Connor and E Trinity filed their respective answers to Anekom's amended complaint. They also filed counterclaims against Anekom and the Estate. Connor and E Trinity (1) sought to foreclose their respective mechanic's liens (count I), (2) alleged breach of contract against Anekom (count II), and (3) sought relief from Anekom and the Estate under section 28 of the Mechanics Lien Act (Act) (770 ILCS 60/28 (West 2012)) (count III). Specifically, Connor alleged it entered into a contract with Anekom on September 21, 2013, to perform carpentry work; by the time Connor completed its obligations under the contract on October 21, 2013, it had provided labor and materials totaling $63,500, which neither Anekom nor the Estate paid. Similarly, E Trinity alleged it entered into a contract with Anekom on May 16, 2013, to perform concrete work and had provided labor and materials totaling $38,070.10, which neither Anekom nor the Estate paid.

### VI. The Estate's Counterclaim

¶ 18    On September 10, 2015, the Estate filed a counterclaim against Anekom, alleging breach of contract and damages "in an amount to be established at trial." The counterclaim alleged, in part, that Anekom "failed to diligently prosecute the work in a timely manner and in accordance with the schedule agreed by the parties." The Estate further alleged that Anekom "failed to perform its work in a reasonably workmanlike manner and in accordance with the plans and specifications, including, but not limited to" failure to (1) properly pour foundation walls, (2) install proper ceiling joists, (3) install hurricane clips and exterior fasteners, (4) properly construct bathroom pocket doors, and (5) construct the dining room archway as

specified by the plans. The Estate also sought indemnification from Anekom for E Trinity's and/or Connor's lien claims.

¶ 19                        VII. Connor's Motion for Summary Judgment

¶ 20        On October 15, 2015, Connor filed a motion for summary judgment on its claim to foreclose its mechanic's lien. In support of its motion, Connor attached the affidavit of its president, Nicholas Connor, which essentially repeated the counterclaim's allegations. Connor asserted that it sent a 90-day notice of lien to all interested parties and recorded the mechanic's lien within four months of completing its work. Connor maintained that it complied with all procedural requirements of the Act and was entitled to judgment on its lien claim as a matter of law.

¶ 21        The Estate responded that summary judgment was inappropriate because (1) it could not be compelled to pay more for the completion of the residence than the amount of its original contract with Anekom and (2) an issue of fact existed as to the value of Connor's work.

¶ 22        Following a January 13, 2016, hearing, the trial court granted Connor's motion for summary judgment and awarded damages in the amount of $78,131.09, plus court costs. The court subsequently denied the Estate's motion for reconsideration.

¶ 23                        VIII. E Trinity's Motion for Summary Judgment

¶ 24        On January 28, 2016, E Trinity filed a motion for summary judgment on its claim to foreclose its mechanic's lien. In support of its motion, E Trinity attached the affidavit of its president, John Flaherty, which essentially repeated the counterclaim's allegations. E Trinity asserted that it sent a 90-day notice of lien to all interested parties and recorded a mechanic's lien within four months of completing its work. E Trinity maintained it complied with all procedural requirements of the Act and was entitled to judgment on its lien claim as a matter of law.

¶ 25        The Estate responded that summary judgment was inappropriate because E Trinity failed to establish compliance with the notice requirements of section 24 of the Act (*id.* § 24). The Estate also took issue with the quality of E Trinity's work.

¶ 26        In May 2016, without argument, the trial court granted E Trinity's motion for summary judgment and awarded damages in the amount of $38,070, plus statutory interest.

¶ 27                        IX. Default Judgment Against Anekom

¶ 28        In February 2016, the trial court entered a default judgment against Anekom. At an April 2016 prove-up hearing, the Estate sought a judgment of $144,834.20, plus costs. The damages included the amounts of Connor's and E Trinity's lien claims. The court entered judgment against Anekom on the Estate's breach of contract claim in the amount of $144,834.20, plus costs.

¶ 29                        X. Subsequent Judgments in Favor of Connor and E Trinity

¶ 30        In August 2016, Connor and E Trinity filed a motion for judgment, asking the trial court to enter judgment in their favor on counts II and III of their respective counterclaims. The trial court granted their motions.

¶ 31    This appeal followed.

¶ 32                                ANALYSIS

¶ 33    On appeal, the Estate challenges the trial court's grants of summary judgment in favor of Connor and E Trinity. The Estate further contends that the personal judgments entered against it must be reversed because an issue of fact exists as to Connor's and E Trinity's *pro rata* shares of money due from Anekom.

¶ 34    When this court examined the record in this case, a question arose as to whether the Estate should be precluded from defending Connor's and E Trinity's lien claims, since the Estate's judgment against Anekom includes the amount of the lien claims. At oral arguments, we ordered the parties to file supplemental briefs to address this issue. For the following reasons, we find that the Estate is precluded from defending the lien claims at issue. Accordingly, we do not reach the merits of the Estate's contentions on appeal.

¶ 35    In their supplemental briefs, the parties address whether the election of remedies doctrine precludes the Estate from defending against Connor's and E Trinity's mechanic's liens. The election of remedies doctrine precludes a party from pursuing two or more inconsistent remedies for the same injury or cause of action. *Lempa v. Finkel*, 278 Ill. App. 3d 417, 423 (1996); *Altom v. Hawes*, 63 Ill. App. 3d 659, 661 (1978). "For one proceeding to be a bar to another, the remedies must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other." (Internal quotation marks omitted.) *Hawes*, 63 Ill. App. 3d at 661-62. The doctrine's application is generally confined to cases "where (1) double compensation of the plaintiff is threatened or (2) the defendant has actually been misled by the plaintiff's conduct or (3) res adjudicata can be applied." (Internal quotation marks omitted.) *Id.* at 663.

¶ 36    On appeal, the Estate asserts that the doctrine does not apply because its judgment against Anekom is not inconsistent with its defenses to Connor's and E Trinity's lien claims. Alternatively, the Estate argues that no threat of double recovery exists. Connor and E Trinity counter that the threat of double recovery is apparent.

¶ 37    We reject the Estate's contention that its breach of contract claim against Anekom, and the defenses raised regarding Connor's and E Trinity's lien claims, are not inconsistent. After obtaining a default judgment against Anekom for breach of contract, the Estate reduced the judgment to writing following a prove-up hearing in which it sought—and received—damages in the amount of $144,834.20. This award included the amounts of Connor's and E Trinity's lien claims. The record shows that the Estate suffered only one injury here, *i.e.*, damages in the amount of $144,834.20. Thus, the remedies pursued by the Estate are clearly inconsistent and irreconcilable. As explained further below, the Estate may not obtain a judgment for damages against Anekom, which includes the amounts of the lien claims at issue here, then turn around and contend that the lien claims are invalid.

¶ 38    The Estate also argues that even if we find the remedies inconsistent, its defenses against the lien claims are not barred because (1) double recovery is not implicated, (2) Connor and E Trinity did not change their positions based on the judgment obtained by the Estate against Anekom, and (3) *res judicata* does not apply.

¶ 39    We agree with the Estate to the extent that neither Connor nor E Trinity changed their positions based on the judgment against Anekom. We also agree that *res judicata* does not

apply. However, based on our review of the record, we conclude that the threat of double recovery in this case is apparent.

¶ 40 On the narrow issue of double recovery, both parties direct our attention to *Hawes*. In that case, pursuant to a separation agreement, the plaintiff procured exclusive possession of certain furniture in the marital home. *Id.* at 660. The plaintiff's estranged husband sold some of that furniture to a family friend for $1500 in violation of the agreement. The trial court subsequently entered judgment against the husband in the amount of $1500 for the value of the furniture. *Id.* at 661. Approximately one month later, the plaintiff filed a complaint in replevin against the defendants, the family friend, and his wife, seeking to recover the furniture. *Id.* at 660. The defendants filed a motion for summary judgment, which the court granted. *Id.* at 661.

¶ 41 On appeal, the issue was whether the election of remedies doctrine precluded the plaintiff from recovering the furniture from the defendants. *Id.* While the *Hawes* court found that plaintiff pursued inconsistent remedies, it noted that in an effort to ameliorate the harsh results that often flow from a strict interpretation of the doctrine, Illinois courts "endeavor to determine not whether by the nature of the remedies invoked they are inconsistent, but whether the party should be estopped to bring the second action." *Id.* at 662. With that in mind, the court found that the record revealed no threat of double recovery because the plaintiff's $1500 judgment appeared to be uncollectible. *Id.* at 663.

¶ 42 In this case, nothing in the record convinces us that the Estate's judgment against Anekom is uncollectible. Although there is evidence that Anekom dissolved in 2014, its dissolution does not necessarily imply that the judgment is uncollectible; actions may be brought against corporations after their dissolution. See 805 ILCS 5/12.80 (West 2014) ("The dissolution of a corporation *** shall not take away nor impair any civil remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability accrued or incurred, either prior to, at the time of, or after such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution."). The Estate's contention that it is "extremely unlikely" it will be able to collect the judgment against Anekom is pure speculation. The Estate offers no evidence whatsoever that it attempted to collect the judgment. Ultimately, if the Estate prevails on its defenses to the mechanic's liens at issue, it could collect the full judgment against Anekom and avoid paying the subcontractors for the value of the work completed on the Estate's home.

¶ 43 The Estate cites *Gluth Brothers Construction, Inc. v. Union National Bank*, 192 Ill. App. 3d 649 (1989), in support of its contention that the threat of double recovery is not implicated here "because Anekom would have the right to set off from the Estate's judgment that amount of the Connor and [E Trinity] judgments the Estate was not required to pay." We find the Estate's reliance on *Gluth* is misplaced.

¶ 44 In *Gluth*, the plaintiffs obtained a judgment against the defendant bank after the bank improperly set off $195,609.56 in funds deposited by its joint venture with Valley Engineering Company (Valley) in order to satisfy a debt that Valley owed the bank. *Id.* at 651; see also *Gluth Brothers Construction, Inc. v. Union National Bank*, 166 Ill. App. 3d 18, 20 (1988). Sometime thereafter, Valley filed for bankruptcy; the bankruptcy court distributed more than $180,000 to the plaintiffs as Valley's creditors. *Gluth*, 192 Ill. App. 3d at 652. At that point, the bank sought a setoff based on the bankruptcy distribution the plaintiff's received. *Id.* The bank argued that a setoff would prevent the plaintiffs from receiving a double recovery. *Id.* at 658. It asserted that if the plaintiffs were permitted to retain the money from the bankruptcy

proceeding in addition to the judgment entered against the bank, plaintiffs would receive "a double recovery for the same alleged injury." *Id.* The appellate court agreed that a double recovery should not be allowed and remanded to the trial court to consider whether a setoff was in fact required. *Id.* The appellate court noted that if the recoveries in both proceedings arose from the same claim, the trial court should award the bank a setoff to avoid a double recovery. *Id.* at 659. Essentially, the *Gluth* court held that a judgment may be reduced to avoid a double recovery only after a payment is received from the alternate source.

¶ 45 Here, the Estate attempts to compare Anekom to the bank in *Gluth* by asserting that Anekom can obtain a setoff from the Estate's judgment against it in the event the Estate successfully defends the lien claims at issue here. However, whether Anekom may ultimately be entitled to some kind of setoff in the event the Estate prevails against the lien claims at issue is irrelevant to this appeal. The Estate chose its remedy when it included the amount of the lien claims in its request for damages against Anekom. As it stands, the Estate could potentially collect its judgment against Anekom tomorrow and, if successful here, also avoid paying the lien claims. Thus, we find that the Estate is precluded from defending the lien claims under the election of remedies doctrine.

¶ 46 Similarly, we find that the doctrine of judicial estoppel also precludes the Estate from defending the lien claims at issue. "Judicial estoppel is an equitable doctrine invoked by the court at its discretion." *Seymour v. Collins*, 2015 IL 118432, ¶ 36. The United States Supreme Court has observed that "the uniformly recognized purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from 'deliberately changing positions' according to the exigencies of the moment." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). Judicial estoppel may be invoked when the party to be estopped has "(1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it." *Id.* ¶ 37.

¶ 47 The facts of this case meet all the prerequisites for judicial estoppel. In its breach of contract action against Anekom, the Estate alleged its damages amounted to $144,834.20, which included the amounts of the lien claims at issue here. The Estate succeeded in its breach of contract action by obtaining a judgment against Anekom for the total amount of damages it sought. Now, the Estate attempts to change its position and assert it is not liable to Connor or E Trinity for their lien claims, despite having obtained a judgment that includes them. The doctrine of judicial estoppel is designed to protect against this exact situation.

¶ 48 Accordingly, we find that the Estate is precluded from defending Connor's and E Trinity's lien claims.

¶ 49                                         CONCLUSION

¶ 50 For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 51 Affirmed.