THE NORTHERN TRUST COMPANY, Plaintiff-Appellant, v. AETNA
LIFE AND SURETY COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—89—0417

Opinion filed December 22, 1989.—Rehearing denied January 30, 1990.

Wildman, Harrold, Allen & Dixon, of Chicago (James T. Nyeste and Timothy W. Heath, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, The Northern Trust Company, sued its insurer, defendant Aetna Life & Surety Company, for its failure to pay attorney fees which Northern incurred defending a suit against it. The trial court dismissed Northern's complaint pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619) on the grounds of collateral estoppel. Northern appeals, contending that the complaint is not barred by prior litigation.

On November 20, 1972, Hillard W. Marks died, and his will engendered many disputes. (See *In re Estate of Marks* (1979), 74 Ill. App. 3d 599, 393 N.E.2d 538.) Helen S. Baron, Marks' common-law wife, was beneficiary and co-executor of the Marks estate along with Northern. In 1975, Baron sued Northern and others. The suit included the allegation that Northern "[a]ttempted to interfere with the attorney client relationship existing between [Baron] and her counsel by repeatedly advising [Baron's] counsel that [Baron] was a liar, a person of low morals and untrustworthy, all of which [Northern] knew was untrue, with the intent of persuading [Baron's] counsel to withdraw and thereby coerce plaintiff into giving up her interests in [Marks'] estate."

Aetna insured Northern under a policy covering occurrences and offenses committed during the relevant period, including "all sums which [Northern] shall become legally obligated to pay" arising out of Northern's business, including "the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy." The policy also covered claims against Northern arising out of "malicious prosecution."

In addition, under the policy Aetna had "the right and duty to defend any suit against [Northern] seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient."

Northern tendered the defense of the *Baron* complaint to Aetna. Because Aetna appointed an attorney only to monitor the case, Northern conducted its own defense and paid its own attorney fees. On April 2, 1976, Aetna sent Northern a reservation of rights letter in the *Baron* case, stating that it "defended" Northern under a reservation of rights due to the defamation allegation in the *Baron* case, which Aetna recognized was potentially covered under the policy. On January 18, 1977, Aetna notified Northern that a declaratory action would be filed by Aetna. On March 22, 1978, Aetna filed the declaratory action.

In the meantime, the trial court in *Baron* dismissed from the *Baron* complaint all allegations against Northern. This court affirmed in part and reversed in part. (*Baron v. The Northern Trust Co.* (1st Dist. 1982), No. 81—1972 (unpublished order under Supreme Court Rule 23).) In a supplemental Rule 23 order, this court specifically upheld the dismissal of the defamation allegation against Northern. *Baron v. The Northern Trust Co.* (1st Dist. 1984), No. 81—1972 (unpublished order under Supreme Court Rule 23).

After this court issued its supplemental order, Aetna moved for summary judgment in the declaratory action. Aetna averred in the motion that the "only allegation in the *Baron* complaint directed against Northern which could be construed as alleging potential coverage under Aetna's policy" was the defamation allegation. Aetna stated further that the *Baron* complaint "potentially could be construed by a court as alleging defamation. Thus, there was a potential for coverage under Aetna's policy. Accordingly, Aetna provided a defense for Northern under a Reservation of Rights."

Aetna argued further that, because this court dismissed the defamation allegations against Northern, "Aetna *no longer* has a duty to defend or indemnify Northern for the allegations contained in the *Baron* lawsuit *** and that therefore, Aetna is entitled to summary judgment in its favor and against" Northern. (Emphasis added.) In its prayer for summary judgment, Aetna again stated that the defamation claims were "the only allegations in the said [*Baron*] complaint which allege potential coverage under Aetna's policy."

On May 6, 1986, the trial court denied Aetna's motion for summary judgment, reasoning that disputed facts remained as to whether certain allegations could be construed as "property damage" under the policy. The court did not refer to the defamation allegations. Both Aetna and Northern filed motions to reconsider. The trial court granted Aetna's motion for reconsideration, which argued that certain trust property was not covered. The court denied Northern's motion

for reconsideration, which had argued that a "malicious prosecution" allegation was covered under the policy. Northern appealed, and this court affirmed the trial court's decision. (*Aetna Life & Surety Co. v. Northern Trust Co.* (1988), 169 Ill. App. 3d 678, 523 N.E.2d 1043.) The defamation allegations were not addressed in that opinion.

On December 3, 1986, Northern filed this suit. It alleged that Aetna had a duty to defend it from the inception of the 1975 *Baron* suit until the defamation allegation was finally dismissed on April 26, 1984, and that Aetna failed to do so. Northern sought reimbursement of $61,457.67 in attorney fees which it had incurred in defense of *Baron*.

Aetna moved to dismiss the complaint as being barred by *res judicata* as a result of Aetna's declaratory action. The trial court granted the motion for dismissal, holding that it was barred by *res judicata*. The court reasoned that the attorney fees claim could have been raised in the declaratory judgment action.

Northern moved for reconsideration. The trial court then stated it erred in holding that *res judicata* applied. In a corrected decision, the trial court held that the claim for attorney fees was barred by collateral estoppel. Both parties agree that only *res judicata* applies, but Aetna asserts that, nevertheless, the trial court properly dismissed the suit.

■ ■ The doctrine of *res judicata* (estoppel by judgment) applies when the second suit is between the same parties and is based on the same cause of action as the first suit. *Res judicata* holds that a final judgment on the merits is conclusive as to the rights of the same parties in subsequent litigation as to all issues which *might have been raised*, regardless of whether they were in fact litigated. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959.) Collateral estoppel (estoppel by verdict), which does not apply here, comes into play when a party participates in two separate and consecutive cases, and some controlling fact or question material to the determination of both cases has been adjudicated against that party in the former suit by a court of competent jurisdiction. Under collateral estoppel, the judgment in the first suit is binding only with regard to the issues *actually litigated* in that suit. *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959; *Benton v. Smith* (1987), 157 Ill. App. 3d 847, 510 N.E.2d 952.

Aetna and Northern participated in both the declaratory judgment action and in the present suit. Thus, if the present suit involves the same cause of action, the previous judgment is conclusive as to all issues which might have been raised. The issue of whether Aetna

should pay Northern's attorney fees would be barred simply because it might have been raised in the previous suit. Aetna, as the party relying on the doctrine of *res judicata*, bears the heavy burden of showing what was determined by the prior judgment, and if any uncertainty exists the doctrine will not be applied. (See *Benton v. Smith*, 157 Ill. App. 3d 847, 510 N.E.2d 952; *Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 395 N.E.2d 1143.) Aetna has failed to meet that burden.

■■ ■ In determining the identity of the cause of action in two suits, the courts generally focus on the factual setting from which each claim arises, although the perimeters of the factual setting have been defined both rigorously and liberally. R. Michael, 4 Illinois Practice: Civil Procedures Before Trial §41.5, at 312-13 (1989), citing, among other cases, *Wilbon v. D.F. Bast Co.* (1978), 73 Ill. 2d 58, 382 N.E.2d 784.

Under either the more stringent test, requiring identical operative facts before *res judicata* will be applied (see, *e.g., Neuberg v. Michael Reese Hospital & Medical Center* (1983), 118 Ill. App. 3d 93, 454 N.E.2d 684), or the more liberal test, requiring only a factual overlap (see, *e.g., Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959; *Edwards v. City of Quincy* (1984), 124 Ill. App. 3d 1004, 464 N.E.2d 1125), *res judicata* does not bar the present action. (See also Restatement (Second) of Judgments, §24(1), comment *b* (1982) (Test for determining whether two suits involve same cause of action is whether the first suit involved all or any part of the transaction, or series of connected transactions out of which the actions arose. A "transaction" means "a natural grouping or common nucleus of operative fact").) The present suit for attorney fees, resulting from defending *Baron* prior to the dismissal of the defamation count, sets forth an entirely different cause of action than the previous declaratory action's summary judgment motion limiting the determination to the issue of whether Aetna was required to provide attorneys or attorney fees for the defense of counts remaining in *Baron*.

In the present case, then, the relevant transactions resist any attempt to connect them as *operative* facts. The operative facts in each case span completely different time periods. The present case focuses on *Baron*'s original defamation action; it never needs to look past the moment in time when that count was dismissed. The declaratory action never needed to look back at the dismissed defamation action; it only needed to focus on the *remaining* counts.

The present suit focuses on Northern's tendering the *Baron* defense to Aetna, Aetna's appointment of counsel to "monitor" the de-

fense, and Aetna's repeated statements that, under a reservation of rights clause, it was defending Northern because of the potential coverage under the policy. In contrast, the declaratory action merely requires a comparison of the counts remaining in *Baron* and the insurance policy itself.

■ In addition to our finding that the two cases involve different causes of action, and our finding that the defamation-related attorney fees could not have been raised in the first action, fairness and justice preclude our invocation of the doctrine of *res judicata*. Even where all the essential elements of *res judicata* are satisfied, its effect will be denied in order to avoid injustice. See R. Michael, 4 Illinois Practice: Civil Procedure Before Trial §41.5, at 311 n.9 (1989), citing *Adams v. Pearson* (1952), 411 Ill. 431, 104 N.E.2d 267, comparing *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959.

In the previous declaratory judgment action, Aetna deprived Northern of the opportunity to ask the trial court to determine the attorney fees claim, or anything related to the defamation count. Aetna itself *withdrew* the issue of whether it had a duty to defend the defamation issue prior to final judgment in the declaratory action. Now it maintains that, notwithstanding its own conduct in removing the issue from the case, its duty to defend Northern from the defamation allegations was, or could have been, actually adjudicated in the prior action.

It would be unfair to bar this suit after Aetna belatedly limited its summary judgment prayer in the declaratory action to less than all the relief originally requested; conceded that *Baron* raised defamation claims which Aetna had a potential duty to defend Northern against until that claim was dismissed; admitted that it represented Northern under a reservation of rights clause; and then merely appointed counsel to "monitor" the case, while Northern was forced to hire counsel to defend itself until the defamation claim was dismissed. *Res judicata* will not be used in such a manner as to defeat principles of fairness and justice. (See *Benton v. Smith*, 157 Ill. App. 3d 847, 510 N.E.2d 952; *Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 395 N.E.2d 1143.) In view of the facts and chronology we have set forth, we find that imposing the doctrine of *res judicata* would result in serious injustice or inequity.

Aetna points to, and the trial court relied upon, language in this court's prior opinion regarding Baron's limiting her attempt to seek recovery from Northern only under a malicious prosecution claim. In that appeal, the court addressed the issue of whether the *Baron* complaint alleged malicious prosecution such that the policy would require

Aetna to defend. This court held that the allegations could not reasonably be characterized as malicious prosecution. There was no reference to the defamation allegations covered under a different subparagraph of Aetna's policy.

We hold that the questions raised in Northern's present suit for attorney fees are not barred under the doctrine of *res judicata*.

For these reasons, the judgment of the circuit court of Cook County dismissing plaintiff's cause of action is reversed, and the cause is remanded for further proceedings consistent with the holdings contained herein.

Reversed and remanded.

LORENZ and LaPORTA, JJ., concur.